**Martin BLEIER and James Masterson, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Local 164 of the International Brotherhood of Electrical Workers, Intervenor.**

**No. 71–1448.**

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 1971.

Decided March 24, 1972.

John J. Bracken, Bracken, Walsh & Craig, Newark, N. J., for petitioners.

Vivian Miller, N.L.R.B., Washington, D. C., for respondent.

Before BIGGS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Martin Bleier and James Masterson petition this court for review of a decision of the National Labor Relations Board, dismissing an unfair labor practices complaint filed in September 1969 charging a Hudson-Bergen County, New Jersey, employers' association whose members perform electrical construction work in and outside the State of New Jersey with violation of Sections 8(a) (1) and (3) of the National Labor Relations Act (29 U.S.C. § 158(a) (1) and (3) ) and Local 164 of the International Brotherhood of Electrical Workers, AFL–CIO, with violations of Sections 8(b) (1) (A) and 8(b) (2) of that Act (29 U.S.C. § 158(b) (1) (A) and 158 (b) (2)). The basis of the charges filed in May and September 1969 by petitioners which resulted in the issuance of the complaint was a provision, first contained in a 1963 contract between Local 164 and the Hudson-Bergen County employers' association,[1] by which Group 1 hiring priority is given to employment applicants who pass a journeyman's examination given by Local 164.[2] After a hearing on the charges filed by Bleier and Masterson, the Trial Examiner on February 10, 1971, found that the respondents named in the complaint had not engaged in the alleged unfair labor practices and recommended that the complaint be dismissed. On April 29, 1971, upon exceptions filed by the General Counsel, the NLRB adopted the Recommended Order of the Trial Examiner and ordered that the complaint be dismissed. We deny the petition for review of this order.

■ Bleier and Masterson have argued, in this court that Local 164 has violated its statutory duty to fairly represent all workers by, in essence, wrongfully expelling them from their employment status and illegally discriminating against nonmembers. In Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), the Court stated:

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

The Court also "assumed" that a breach of this duty of fair representation would constitute an unfair labor practice.[3] See 386 U.S. at 178, 186, 87 S.Ct. 903, 916. On this record, we hold that the Board did not abuse its discretion in finding that Local 164 and the Hudson-Bergen County employers' association did not commit the unfair labor practices alleged by Bleier and Masterson. The General Counsel of the NLRB

1. Local 164, an intervenor in this proceeding, argues that Bleier and Masterson knew, or should have known, of the 1963 contract provision well before six months prior to the time that the complaint was filed with the NLRB, and that, therefore, the charges should have been dismissed pursuant to Section 10(b) of the National Labor Management Relations Act. The Trial Examiner, however, explicitly made no resolution of the factual issues involved in this claim.

2. It appears that under the terms of the contract between Local 164 and the Hudson-Bergen County employers' association, Local 164 is the exclusive source of referrals of applicants for employment.

Employment referrals are made by Local 164 under a system of priority contained in this contract, which system has apparently remained unchanged in relevant part since 1963.

3. See N.L.R.B. v. Miranda Fuel Co., 140 N.L.R.B. 181 (1962), enforcement denied, 326 F.2d 172 (2d Cir. 1963) ; Local 12, United Rubber, etc., Workers v. N.L.R.B., 368 F.2d 12 (5th Cir. 1966). In Miranda Fuel, the Board declared that a union which holds exclusive representation rights commits an unfair labor practice if it takes action "against any employee upon considerations which are irrelevant, invidious, or unfair." 140 N.L.R.B. at 185.

argued before the Trial Examiner and the Board that the union breached its duty of fair representation in failing to provide some sort of "grandfather clause" provision for those workers who had been accorded top priority status for a long period of time.[4] The Board, however, adopted the finding of the Trial Examiner that such a rule of law "would lead to a completely unworkable and chaotic situation" and adopted the Trial Examiner's conclusion that the 1963 change in the priority referral system was not unfair to Bleier and Masterson or a breach of the union's duty of fair representation. These judgments are adequately supported by the evidence before the Trial Examiner and the Board. The General Counsel conceded that the 1963 change was not adopted with any intent to discriminate against any particular individual or group of individuals and there was no credible evidence presented at the hearing to indicate that the Local 164 examination was conducted or graded in an unfair or discriminatory manner. Thus there was nothing in the design or operation of the 1963 priority scheme to prevent Bleier and Masterson from taking and passing the Local 164 examination and thereby achieving Group 1 status;[5] in other words, Bleier and Masterson were not frozen into an inferior position or permanently denied access to a top priority position. In these circumstances, this court cannot find that the Board has abused its discretion in concluding that Local 164 did not breach its duty of fair representation and that Local 164 and the Hudson-Bergen County employers' group did not commit unfair labor practices.[6]

■ Bleier and Masterson have also argued that the General Counsel of the

---

4. Local 164 strenuously argues that at no time were either Bleier or Masterson Group 1 employees, so that they were not even the proper beneficiaries of such a grandfather clause. The Trial Examiner, however, did not find it necessary to decide this issue and assumed, but did not find, that Bleier and Masterson had been employed as journeymen electricians for 29 and 12 years, respectively, and had been using Local 164's hiring hall for 25 and 9 years, respectively.

5. Bleier and Masterson have apparently passed journeymen's examinations in Augusta, Maine, and Bowling Green, Kentucky, respectively. It appears, however, that neither has ever applied to take the journeyman's examination given by Local 164.

6. Bleier and Masterson have argued before this court that the requirement that any employee take and pass an examination given by Local 164 in order to achieve Group 1 status is itself a breach of the union's duty of fair representation. As indicated above, the General Counsel specifically conceded, before the Trial Examiner and before the Board, that such requirement was not itself a breach of the union's duty of fair representation. Since only the General Counsel appealed the Trial Examiner's decision to the Board, although Bleier and Masterson could also have done so (see Internat'l Union of Electrical, Radio & Machine Workers v. N. L. R. B., 110 U.S.App. D.C. 91, 289 F.2d 757, 761 (1960)), this argument was not presented to the Board for its consideration. In these circumstances, sound principles of judicial administration suggest that this court refrain from consideration of this argument on a petition for review of the Board's order. See Andrews v. Chemical Carriers, Inc., 457 F.2d 636 (3d Cir. 1972). We note, however, that the cases cited by Bleier and Masterson in their brief before this court do not support their claim. In the main these cases deal with the exclusion or expulsion of employees from a union, whereas Bleier and Masterson complain not that they were denied union membership but that they were denied top priority status. Indeed, the Trial Examiner notes in his opinion that there is no evidence at all that either Bleier or Masterson ever failed to get referred for work as a result of their not being in Group 1. Further, the cases cited by Bleier and Masterson indicate simply that a union may not be arbitrary, unreasonable or discriminatory in its exclusion or expulsion of members. They do not suggest that a fair, non-discriminatory journeyman's examination, as is apparently involved in this case, would be unacceptable. See, also page 6, *infra*.

NLRB breached his fiduciary duty to them by conceding before the Trial Examiner and the Board (a) that the 1963 contract priority provisions are valid on their face and (b) that this 1963 change was not designed to discriminate against them or any other employment applicants. On the first point we cannot say that the General Counsel violated his duty to Bleier and Masterson by failing to argue that the priority scheme was invalid on its face, particularly since, as the Trial Examiner noted, similar arguments had already been rejected by the Board. *E. g.,* Local No. 42, Intern'l Assn. of Heat & Frost Insulators & Asbestos Workers (Catalytic Construction Co.), 164 N.L.R.B. 916 (1967). *See* Piasecki Aircraft Corp. v. N. L. R. B., 280 F.2d 575, 588 (3d Cir.), cert. denied, Intern. Union United Auto Aircraft and Agr. Implement Workers of America v. N. L. R. B., 364 U.S. 912, 81 S.Ct. 276, 5 L. Ed.2d 365 (1960); *cf.* Nat'l, Maritime Union v. N. L. R. B., 423 F.2d 625 (2d Cir. 1970). See also note 6, supra.

The second alleged breach of duty is also without foundation in the record. Although Bleier and Masterson could have introduced evidence before the Trial Examiner, *see, e. g.,* International Union of Electrical, Radio & Machine Workers v. N. L. R. B., *supra,* they presented no evidence to support their charges of illegal discrimination. Indeed, as indicated above, they did not exercise their right to appeal the adverse decision of the Hearing Examiner. In these circumstances, this court cannot say that the General Counsel violated a fiduciary duty owed to Bleier and Masterson.[7]

The additional arguments advanced by Bleier and Masterson have been considered and are rejected.

For the foregoing reasons, the petition for review of the Board's order in this case will be denied.

7. The argument that the NLRB failed in its duty to investigate the charges filed by Bleier and Masterson is similarly without foundation.