817 F.2d 235
 125 L.R.R.M. (BNA) 2335, 106 Lab.Cas. P 12,383
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL LODGE NO. 707, INTERNATIONAL ASSOCIATION of MACHINISTS
and AEROSPACE WORKERS, Aeronautical Industrial District No.
91, and the International Association of Machinists and
Aerospace Workers, Respondents,
Wayne A. Gilbert, Intervenor.
 No. 883, Docket 86-4144.
 United States Court of Appeals,
Second Circuit.
 Argued March 4, 1987.
Decided April 29, 1987.
 
 Beverly A. Oyama, Attorney, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Peter Winkler, Supervisory Attorney, N.L.R.B., Washington, D.C., of counsel), for petitioner.
 Sheldon Engelhard, Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Daniel A. Ladow, Stuart Bauchner, of counsel), for respondents.
 Peter F. Culver, Gallant, Gallant & Culver, New Haven, Conn., for intervenor.
 Before OAKES and WINTER, Circuit Judges, and BONSAL, District Judge.*
 PER CURIAM:
 
 
 1
 The National Labor Relations Board ("NLRB" or the "Board") Petitioner, pursuant to the National Labor Relations Act as amended (the "Act"), seeks enforcement of its Order of January 16, 1986 (the "Order") against Local Lodge No. 707, International Association of Machinists and Aerospace Workers ("Local 707"), Aeronautical Industrial District No. 91 ("District 91"), and the International Association of Machinists and Aerospace Workers ("International"), Respondents.
 
 
 2
 Respondents oppose enforcement of the Order, or, if it is to be enforced, request that the provisions regarding publication of the Order by the Respondents be modified.
 
 
 3
 These proceedings arise out of a bitter conflict within Local 707. The complainant before the NLRB, Wayne A. Gilbert, was formerly president of Local 707. On January 15, 1984, Local 707 filed internal union charges against Gilbert and others, alleging that they were engaging in conduct unbecoming union members and distributing literature "vicious and malicious in its content," so "as to destroy the [International] and ... Local 707." On January 17, 1984 Gilbert responded by filing charges with the NLRB against the Respondents charging them with violating Section 8(b)(1)(A) of the Act by coercing and restraining employees in the exercise of their rights guaranteed in Section 7 of the Act and by denying fair representation to Gilbert in breach of their fiduciary duty. Gilbert's charges were heard by Administrative Law Judge Harmatz in August, 1984. He concluded that by filing internal disciplinary charges against Gilbert and the others for their participation in intra-union activity, Local 707 and International had violated Section 8(b)(1)(A) of the Act. The ALJ's Order, dated January 17, 1985, was affirmed by the Board by order dated September 30, 1985 which ordered Local 707 and International to cease and desist from filing internal disciplinary charges against members of Local 707 in reprisal for their participation in protected union activity. They were required to post an appropriate notice.
 
 
 4
 Also in August, 1984, Gilbert filed the present charges with the NLRB which allege, inter alia, that his membership in Local 707 had been unlawfully cancelled by the Respondents. Following hearings, Administrative Law Judge Lawrence found that International, District 91 and Local 707 had violated Section 8(b)(1)(A) of the Act by cancelling Gilbert's membership in Local 707. He further found that they had violated their fiduciary duty towards Gilbert as a member of Local 707, and that they had acted solely because he distributed to fellow members of Local 707 election campaign leaflets critical of the incumbent administration and because he filed unfair labor practice charges against Respondents.
 
 
 5
 The Board accepted ALJ Lawrence's findings, and by Order dated January 16, 1986 held that Respondents had violated Section 8(b)(1)(A) of the Act by cancelling Gilbert's union membership without prior notice to him, thereby jeopardizing his employment, all because of his internal union activities and because he had filed unfair labor practices with the Board. The Board ordered the Respondents to cease and desist from: (1) rejecting tenders of dues by Gilbert; (2) taking any action to bar Gilbert from membership in Local 707; (3) barring Gilbert from seeking elective union office on the ground that he is not a member in good standing; and (4) refusing to appoint Gilbert to his former position as third shift area safety representative at the North Haven facility of Pratt & Whitney. In addition, Respondents were ordered to take affirmative action to effectuate the policies of the Act, including:
 
 
 6
 (a) reinstating Gilbert to membership upon payment of dues;
 
 
 7
 (b) expunging from Respondents' records any reference to the lapsing of Gilbert's membership in Local 707;
 
 
 8
 (c) notifying any organizations to whom they had given notice that Gilbert was no longer a member of Local 707, that he had been restored to full membership;
 
 
 9
 (d) appointing Gilbert to his former position as third shift area safety representative at the North Haven facility of Pratt & Whitney;
 
 
 10
 (e) permitting Gilbert to attend and participate in all membership meetings of Local 707;
 
 
 11
 (f) permitting Gilbert to be a candidate for any elective office in Local 707;
 
 
 12
 (g) posting at their respective business offices, meeting halls and all places where notices to members and other employees are customarily posted, copies of the Notice attached to the Order, which Notice is marked "Appendix."
 
 
 13
 (h) publishing the complete text of the Notice in a conspicuous place in one issue of any publication which it mails regularly to its membership and mailing a copy of said publication containing the Notice to each member of Local 707 and to all persons not members of the Respondents' unions who had been advised that Gilbert's membership in Local 707 had been cancelled.
 
 
 14
 (i) furnishing copies of the Notice to Pratt & Whitney for posting; and
 
 
 15
 (j) notifying the Board within 20 days from the date of the Order what steps Respondents have taken to comply therewith.
 
 
 16
 A review of the record satisfies us that there was substantial evidence supporting the ALJ's and the Board's finding that the Respondents violated Section 8(b)(1)(A) of the Act by cancelling Gilbert's membership in Local 707 without notice because he had engaged in internal union activities and because he had filed unfair labor practice charges with the Board. See NLRB v. Industrial Union of Marine & Shipbuilding Workers, 391 U.S. 418, 424, 88 S.Ct. 1717, 1721, 20 L.Ed.2d 706 (1968) (employees' rights under Section 7 of Act include right to file charges with Board); NLRB v. Local 294, Int'l Bhd. of Teamsters, 470 F.2d 57, 60 (2d Cir.1972) (same); National Maritime Union v. NLRB, 423 F.2d 625, 626 (2d Cir.1970) (employees' rights under Section 7 include right to engage in intra-union activity in opposition to incumbent administration). While Respondents challenge the authority of the Board to issue the Order, their primary objection seems to be directed to the affirmative action, viz., the publication of the Order in the journal published by International.
 
 
 17
 Section 10(c) of the Act (29 U.S.C. Sec. 160(c)) authorizes the Board to "take such affirmative action" as will effectuate the policies of the Act. Affirmative action is remedial, not punitive, and is to be exercised under the Board's authority to prevent violations of the Act. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 236, 59 S.Ct. 206, 219, 83 L.Ed. 126 (1938). Therefore, Congress has delegated to the Board the authority to determine when a particular remedy, such as publication of a notice, will best effectuate the policies of the Act. Shepard v. NLRB, 459 U.S. 344, 349, 103 S.Ct. 665, 668, 74 L.Ed.2d 523 (1983); NLRB v. Food Store Employees Union, Local 347, 417 U.S. 1, 8, 94 S.Ct. 2074, 2079, 40 L.Ed.2d 612 (1974); NLRB v. J.H. Rutter-Rex Mfg. Co., 396 U.S. 258, 262-63, 90 S.Ct. 417, 419-20, 24 L.Ed.2d 405 (1969); NLRB v. Local 3, Int'l Bhd. of Elec. Workers, 730 F.2d 870, 879 (2d Cir.1984).
 
 
 18
 In view of its expertise in the field, the Board's choice of affirmative action should be given a high degree of deference and be subject to limited judicial scrutiny. Teamsters Local 115 v. NLRB, 640 F.2d 392, 399 (D.C.Cir.), cert. denied, 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981).
 
 
 19
 We believe that the Board acted within its discretion in requiring publication of the notice in the journal of International. International was directly involved, through its agent Almeida, in the cancellation of Gilbert's membership in Local 707. Moreover, International notified other labor organizations that Gilbert's membership in Local 707 had been cancelled. Because of this, we think that the Board acted reasonably in requiring publication of the Notice in International's journal. Moreover, it appears that neither District 91 nor Local 707 publishes a journal. Rather than punishing or embarrassing the Respondents, we think that the affirmative action requiring publication was appropriate to redress the violations found.
 
 
 20
 THE BOARD'S ORDER IS ENFORCED.
 
 
 
 *
 Honorable Dudley B. Bonsal, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation